Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,664-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                Appellee

Versus

JONATHAN TYRONE COOPER        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 389,219

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT      Counsel for Appellant
By: Edward K. Bauman

JAMES E. STEWART, SR.            Counsel for Appellee
District Attorney

REBECCA A. EDWARDS
MICHAEL T. ANDERSON
Assistant District Attorneys

* * * * *

Before COX, STEPHENS, and MARCOTTE, JJ.

**STEPHENS, J.,**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable John Mosley, Jr., Judge, presiding. The defendant, Jonathan Tyrone Cooper, was indicted by a Caddo Parish grand jury on July 19, 2022, for the first degree rape of his minor child, A.C., when A.C. was under the age of thirteen years old, a violation of La. R.S. 14:42(A)(4). Following the trial, the jury found Cooper guilty as charged, and the trial court sentenced him to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. For the following reasons, Cooper's conviction and sentence are affirmed, but we remand this matter for compliance with La. R.S. 15:543.

## FACTS AND PROCEDURAL HISTORY

On May 12, 2022, A.C. reported to her teacher at her elementary school that her father, Jonathan Cooper, had touched her inappropriately and had sex with her. A.C., her brother, J.C., and Cooper were living together with Cooper's mother at the time A.C. confided in her schoolteacher.[1] A jury trial commenced on November 21, 2024, where the following evidence and testimony was presented.

A.C.'s teacher, Penny Brown, testified that A.C. told her that she could not take it anymore and had to tell someone. A.C. then described what would happen during these interactions with A.C.'s father. A.C. told Ms. Brown that Cooper would have his pants down and her pants would be down while Cooper was on top of her. A.C. related to Ms. Brown that A.C. told

---

[1] A.C.'s brother, J.C., also made statements that corroborated A.C.'s story. He related that he saw "it" happen between his father and his sister one time. There was also testimony that J.C. heard his sister and his father on several occasions.

her grandmother, who informed her not to tell anyone. Ms. Brown stated that she then took A.C. to the school counselor, and Ms. Brown and the counselor contacted CPS and law enforcement. Ms. Brown stated that A.C. had previously told lies or attempted to mislead her, but A.C. showed every sign of telling the truth on the day she told Ms. Brown about the sexual abuse.

Dr. Jennifer Rodriguez, an associate professor at LSU Health Shreveport and the medical director at the CARA Center for children who are suspected of being abused or neglected, testified at trial as an expert in child abuse pediatrics. Dr. Rodriguez stated that she performed A.C.'s examination the day after she had been placed in foster care. During the examination, Dr. Rodriguez inquired if A.C. had experienced any bleeding following the encounters with her father. A.C. replied she did not remember any bleeding. Dr. Rodriguez stated that A.C. had some redness close to her hymen, but her hymen and anus looked normal. Dr. Rodriguez testified that a normal exam does not indicate the lack of sexual abuse. She stated that often children who experience abuse typically have "normal" results following an examination due to elasticity and fast-healing qualities of certain body parts.

Lacie Hadley, the director of forensic interviews at the Gingerbread House Children's Advocacy Center, was tendered by the State as an expert and testified at trial. When questioned about her qualifications, Ms. Hadley stated to the court that she has a bachelor's degree in psychology and a master's degree in counseling. She discussed that a week-long training is required to become a forensic interviewer, and she is required to complete a minimum of 20 hours of continuing education each year. Ms. Hadley

testified that she has attended multiple trainings in advanced forensic interviewing, which included how to interview children who are victims of human trafficking, and how to interview children with disabilities. Not only had she participated in several conferences and training courses led by experts in the field, but Ms. Hadley testified that she has led and conducted several presentations and training courses alongside other forensic interviewers. Ms. Hadley stated that she has been a co-facilitator for peer reviews, and she has completed over 2,000 forensic interviews in her eight years as an interviewer.

Defense counsel objected to Ms. Hadley being accepted as an expert and explained that the defense was not satisfied that Ms. Hadley was an expert in the field. Counsel argued that the defendant had no pretrial notice that the State intended to qualify Ms. Hadley as an expert. However, the trial court ultimately qualified Ms. Hadley as an expert, and defense counsel's objection was noted for the record.

Ms. Hadley testified that she performed A.C.'s forensic interview on May 12, 2022. She discussed A.C.'s body language in the video footage from the Gingerbread interview. A.C.'s body was facing Ms. Hadley when they were discussing neutral things, but A.C. began to turn her body away from Ms. Hadley when they entered the disclosure phase of the interview. Ms. Hadley testified that A.C. wrote on a piece of paper during the interview that she was scared her dad was going to be in jail. A.C. also indicated to Ms. Hadley during the interview that she told her grandmother about the abuse, but her grandmother told her not to tell anybody else.

Barry Hornsby, the former supervisor over sex crimes at the Shreveport Police Department, testified at trial. Hornsby stated that he was

3

the monitoring law enforcement officer for the Gingerbread interview. Following A.C.'s interview wherein she indicated that her father was "hunching" her, SPD had probable cause to arrest Cooper. Hornsby also testified that his investigation revealed that there was evidence of oral and anal penetration. Hornsby has seen false claims of sexual assault from his experience with the sex crimes unit. However, he testified that no signs of false claims were present in this case.

A.C. testified that she knew the difference between a truth and a lie. She stated that she remembered talking to Ms. Hadley, and she told Ms. Hadley the truth. A.C. also stated that when she was seven, eight, and nine years old, she lived with her grandmother.

Lashondra Owens, a CPS investigator, also testified. She stated that A.C.'s Gingerbread interview helped her determine that A.C. needed to be removed from the grandmother's home and put in an emergency placement for her safety and well-being. Ms. Owens related that she saw no signs of deception about the information A.C. had provided in her interview. Ms. Owens also testified that to her knowledge the children (A.C. and her brother) were placed with their biological mother.

A.C.'s grandmother, Charlesetta Cooper, testified that A.C. never informed her that Cooper had sexually abused her. Ms. Cooper stated that if something like that had happened in her house, she would have known about it because she is home all the time. She stated that while she loved her son, she would never lie for him. Ms. Cooper also testified that the children, A.C. and her brother, had a history of lying.

Last to testify at trial was the defendant, Jonathan Cooper. He stated that he did not do what he had been accused of. Cooper testified that A.C.

made up the story because she was mad at him for refusing to give her a snack around midnight one evening. He told the jury that he was having health issues, his father had passed away, and his wife had left him around the time this was happening.[2] Because of this, Cooper testified that he was depressed and not in his right mind. Cooper stated that he suffers from kidney failure, high blood pressure, and erectile dysfunction. These reasons ultimately led him to send a text message to Ms. Owens, the CPS investigator, that while he maintained that he did not do what A.C. accused him of, he would take responsibility and that he felt his children would be better off if he did take responsibility for the things of which he was accused.

Following the close of trial on November 21, 2024, the jury returned a unanimous verdict of guilty as charged of first-degree rape. On January 8, 2025, Cooper filed a motion for new trial and a motion for post-verdict judgment of acquittal, but the trial court denied both motions, finding that the testimony of all of the witnesses was sufficient for the verdict reached in the case. The sentencing hearing took place on February 11, 2025. The trial court imposed a sentence of life imprisonment without the benefit of probation, parole, or suspension of sentence. The sentence was to run concurrently with any other sentence Cooper would be required to serve and Cooper was given credit for time served. Cooper filed a motion to reconsider sentence on March 6, 2025, which was denied by the trial court on that same date. Cooper now appeals his conviction.

---

[2] The State established on cross-examination that Cooper's wife left two years prior to A.C.'s allegations.

**DISCUSSION**

In his sole assignment of error, Cooper asserts that the trial court erred in allowing Lacy Hadley to testify as an expert witness, thereby bolstering A.C.'s testimony and denying Cooper his right to a fair trial. He urges that the trial court abused its discretion in qualifying Ms. Hadley as an expert because it did not specify on the record or for the jury the field in which Ms. Hadley was an expert. In reply, the State contends that the trial court properly qualified Ms. Hadley as an expert and was within its discretion to do so. The State asserts that Cooper's arguments have no merit as the record clearly indicates that Ms. Hadley was accepted as an expert witness in her field of forensic interviewing. The State points out that Ms. Hadley testified about her specialized skills and knowledge as well as her education and schooling that would support her being an expert in child forensic interviews.

La. C.E. art. 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was a clear abuse of that discretion. *State v. Hilliard*, 52,652 (La. App. 2 Cir. 8/14/19), 278 So.

6

3d 1065, *writ denied*, 19-01701 (La. 7/24/20), 299 So. 3d 68; *State v. Critton*, 52,058 (La. App. 2 Cir. 8/22/18), 251 So. 3d 1281, *writ denied*, 18-1515 (La. 2/25/19), 266 So. 3d 292; *State v. Farris*, 51,094 (La. App. 2 Cir. 12/14/16), 210 So. 3d 877, *writ denied*, 17-0070 (La. 10/9/17), 227 So. 3d 828.

Despite Cooper's contention that Ms. Hadley's designation as an expert placed her testimony beyond the reach of challenge, denying him his right to confrontation, we note that defense counsel had every opportunity to question her about her experience, education, and training. The only objection the defense offered in its challenge to Ms. Hadley being tendered as an expert was that counsel was not satisfied with Ms. Hadley being considered as an expert in the field of forensic interviewing. We find that no reasonable grounds were given to challenge Ms. Hadley's experience, education, or training in forensic interviewing. The record shows that Ms. Hadley testified extensively about her qualifications, her continuing education, and her experience prior to the trial court qualifying her as an expert in forensic interviewing. The record also clearly reflects that the State requested Ms. Hadley be tendered and accepted as an expert in the field of forensic interviewing.

Given Ms. Hadley's testimony, as well as the trial court's vast discretion in determining the competence of an expert witness, nothing in the record suggests that the trial court abused this discretion in accepting Ms. Hadley as an expert witness in forensic interviewing. Furthermore, most, if not all, of Ms. Hadley's testimony merely described the video footage of A.C.'s Gingerbread interview that was played for the jury. We find that the trial court properly exercised its discretion in qualifying Ms. Hadley as an

expert witness in forensic interviewing. Consequently, Cooper's assignment of error has no merit.

## ERROR PATENT

Following our review of the record and appropriately highlighted in the State's brief, the minutes of the trial court and the record as a whole do not reflect that Cooper was provided with written notice of the sex offender notification and registration requirements as mandated by La. R.S. 15:543.[3] As such, we agree with the State's proposal that this matter be remanded to the trial court to correct this issue and provide appropriate written notice and instructions to Cooper. Once the trial court provides written notice to Cooper, an entry must be made in the court minutes that Cooper was provided with this written notification as required by La. R.S. 15:543.

## CONCLUSION

For the reasons set forth above, the conviction and sentence of the defendant, Jonathan Tyrone Cooper, are affirmed, and the matter is remanded to the trial court for compliance with La. R.S. 15:543.

**AFFIRMED; REMANDED WITH INSTRUCTIONS**.

---

[3] La. R.S. 15:543 provides, in pertinent part:

> The court shall provide written notification to any person convicted of a sex offense and a criminal offense against a victim who is a minor of the registration requirements and the notification requirements of this Chapter. For purposes of this Subsection, the court shall use the form contained in R.S. 15:543.1 and shall provide a copy of the registration and notification statutes to the offender. Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant, and an entry shall be made in the court minutes stating that the written notification was provided to such offenders.